UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | | |
|---|---|---|
| MICHAEL TAD AKIN, | ) | |
| Institutional ID No. 184771, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. |
| | ) | 5:12-CV-209-BG |
| OFFICER RAY CARDENAS, | ) | ECF |
| Chief of Police, Petersburg Police Dept., | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

### Procedural History and Facts

Plaintiff Michael Tad Akin, an inmate currently incarcerated by Texas Department of Criminal Justice (TDCJ), filed this action *pro se* and *in forma pauperis* alleging that Officer Ray Cardenas, Petersburg Police Department Chief of Police, violated his constitutional rights during a high speed pursuit.

In connection with preliminary screening required under 28 U.S.C. § 1915, the undersigned obtained authenticated records from the City of Petersburg and held a hearing pursuant to *Spears v. McCotter*, 766 F.2d 179, 181–82 (5th Cir. 1985). According to authenticated records, a warrant for Akin's arrest for attempted murder issued from Hale County on June 14, 2012. The records show that attempts to serve Akin with the arrest warrant resulted in a vehicular pursuit that at times exceeded 100 miles per hour; spanned two counties; and involved officers from several local jurisdictions, the Texas Department of Public Safety, and the United States Marshals Service.

At the *Spears* hearing, Akin acknowledged that officers from several jurisdictions pursued him at high speeds in order to effect his arrest for charges of attempted murder, a felony for which he later pleaded guilty. He testified that officers from Petersburg Police Department, Hale County Sheriff's Office, Abernathy Police Department, Floydada Police Department, Lubbock County Sheriff's Office, Texas Department of Public Safety, and the United States Marshals Service pursued him for approximately forty-two miles at speeds that at times were in excess of 90 miles per hour. According to Akin and the authenticated records, the pursuit ended when Akin crashed his car into a ditch on the outskirts of Idalou, Texas, a town approximately 19 miles from Petersburg.

Akin's allegations relate to actions that he claims Cardenas took during the pursuit. Akin claims that Cardenas fired two bullets toward him outside of Petersburg and, according to his testimony, this was approximately 20 miles into the pursuit. He claims that the bullets hit the instrument panel and driver's side window of the Chrysler Sebring convertible he was driving, and shrapnel from the bullets ricocheted toward him and lodged in his hand causing injury. Although he did not elaborate on the seriousness of the injury or how the injury has affected him, he testified that the shrapnel remains in his hand. In addition, he testified that he and Cardenas had a history of animosity and that Cardenas smiled at him before he fired the shots. He contends that Cardenas could have shot toward one of the tires on his car to halt the pursuit but chose instead to shoot toward him. Thus, he contends that Cardenas acted unreasonably by shooting toward him and seeks $250,000 in damages for injuries and mental trauma.

After considering the allegations in Akin's Complaint, testimony he gave at the *Spear*s hearing, information from authenticated records, and applicable law, the undersigned determined that Akin set forth allegations sufficient to survive preliminary screening and entered an order for

service. Cardenas responded with a motion to dismiss Akin's Complaint, and Akin filed a response to Cardenas's motion to dismiss. Akin also filed a motion to amend his Complaint. The motions pending before the court therefore include: (1) Cardenas's motion to dismiss and (2) Akin's motion to amend his Complaint.

Akin consented to proceeding before a magistrate judge, but Cardenas did not consent. The undersigned therefore submits this Report and Recommendation. In accordance with the following discussion, the undersigned recommends that the district court grant Cardenas's motion to dismiss and deny Akin's motion to amend his Complaint.

### Cardenas's Motion to Dismiss

**I.      The Parties' Arguments**

Cardenas moves to dismiss Akin's Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Cardenas argues that he is entitled to qualified immunity for the claims Akin brings against him in his individual capacity and that any claims Akin may assert against him in his official capacity are claims against the City of Petersburg and must be dismissed for failure to state a claim upon which relief can be granted.

Akin filed a response in which he argues that Cardenas ignored policy and orders instructing those involved in the pursuit to shoot at the tires of his car rather than at him. He argues that the purpose of the qualified immunity doctrine is to "acknowledge that reasonable mistakes can be made" rather than to allow for "calculative conduct" of an officer who knowingly violates the law. (Akin's Resp. 35.) He claims that Cardenas held animosity against him based on their history, Cardenas purposefully attempted to kill him, and Cardenas is therefore not entitled to qualified immunity. *Id*. Finally, Akin appears to argue that Cardenas is liable in his official capacity as the

3

representative of the City of Petersburg and the Petersburg Police Department because he was the final decision maker and because he was involved in a conspiracy. (Pl.'s Resp. 9.)

## II. Standard

When considering a motion to dismiss under Rule 12(b)(6), the court is limited to the parties' pleadings. *Baker v. Putnal* 75 F.3d 190, 196 (5th Cir. 1996). The court, however, must also consider testimony the plaintiff provided at a hearing held pursuant to *Spears*, 766 F.2d at 181–82. *See Eason v. Holt*, 73 F.3d 600, 602–03 (5th Cir. 1996) (testimony from a *Spears* hearing modifies the complaint and "bears on the evaluation of the sufficiency of the claim"). In addition, the court must liberally construe the plaintiff's complaint in his favor and assume the truth of all well-pleaded facts. *Oliver v. Scott*, 276 F.3d 736, 740 (5th Cir. 2002) (citations omitted).

## III. Individual Capacity – Qualified Immunity

### A. Applicable Constitutional Analysis

In his Complaint Akin alleged that Cardenas attempted to kill him by firing shots at him during the vehicular pursuit on June 14, 2012, but he did not identify which constitutional provision that he believed Cardenas violated. In the order for service that the court entered on March 26, 2013, the undersigned referred to Fourth Amendment law, and Cardenas cited Fourth Amendment law in his motion to dismiss. However, a claim of excessive force incident to arrest, such as Akin claims here, is analyzed under the Fourth Amendment only if the individual was seized: "To bring a § 1983 excessive force claim under the Fourth Amendment, a plaintiff must first show that she was seized." *Flores v. City of Palacios*, 381 F.3d 391, 396 (5th Cir. 2004). He must show: (1) that a seizure occurred and (2) that the seizure was unreasonable. *Brower v. Cnty. of Inyo*, 489 U.S. 593, 599, 109 S. Ct. 1378, 103 L. Ed. 2d 628 (1989).

4

The United States Supreme Court has consistently described the act of seizure as involving restraint on an individual's freedom. *See*, *e.g.*, *United States v. Mendenhall*, 446 U.S. 544, 553, 100 S. Ct. 1870, 64 L. Ed. 2d 497 (1980) (holding that "a person is 'seized' only when, by means of physical force or a show of authority, his freedom of movement is restrained"). In this regard, a seizure occurs when a law enforcement officer "accosts an individual and restrains his freedom to walk away." *Terry v. Ohio*, 392 U.S. 1, 16, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968); *Brower*, 489 U.S. at 597 (noting that a seizure occurs . . . when there is a governmental termination of freedom of movement through means intentionally applied). Accordingly, "[a] person is seized by the police and thus entitled to challenge the government's action under the Fourth Amendment when the officer, by means of force or show of authority, terminates or restrains his freedom of movement." *Brendlin v. California*, 551 U.S. 249, 254, 127 S. Ct. 2400, 168 L. Ed. 2d 132 (2007) (internal quotations omitted). "[T]here is no seizure without actual submission; otherwise, there is at most an attempted seizure." *Id*.

In this case, Cardenas's act of firing gun shots toward Akin did not constitute a seizure because the action did not terminate or restrain Akin's freedom of movement. In fact, according to Akin's testimony, the pursuit continued for miles after Cardenas shot at him. He testified that Cardenas shot at him when he was outside the city limits of Petersburg and that the pursuit ended when he crashed his car into a ditch in front of a house north of Idalou, Texas. Although Akin did not indicate how far he was outside of Petersburg when Cardenas fired his gun, the distance between Petersburg and Idalou is 19 miles. Akin was therefore able to drive his car for a number of miles after Cardenas shot at him and before he crashed his car into the ditch. Thus, the pursuit ended not because of the gun shots Cardenas fired but because of bullets that hit the tires of

5

Akin's car. Akin testified at the *Spears* hearing that one of his tires was "shot out" and that he was consequently forced to crash into a ditch in order to stop the car.

On the other hand, if bullets fired into Akin's tires resulted in the disabling of his car, the act of shooting at Akin's tires would constitute a seizure because it ultimately caused Akin to stop his car. *See Brower*, 489 U.S. at 599 (indicating that a seizure occurs when the person is stopped "by the very instrumentality set in motion or put in place in order to achieve that result"). However, Akin specifically testified that Cardenas "took two shots" at him and that the bullets from the gunshots hit the interior of his car. He has not claimed that Cardenas aimed his gun toward his tires or that bullets from Cardenas's gun hit his tires. Thus, the pursuit may have ultimately ended as a result of gunshots fired at Akin's tires, but it did not end because of the gunshots Cardenas allegedly fired at Akin, and the gunshots Cardenas allegedly fired at Akin are at issue in this case. Accordingly, Akin's allegations do not fall under the Fourth Amendment.

In a case, such as the instant action, in which the plaintiff's allegations do not fall under the rubric of a specific constitutional right, the allegations are analyzed under Fourteenth Amendment due process considerations. *Petta v. Rivera*, 143 F.3d 895, 901 (5th Cir. 1998). The touchstone of Fourteenth Amendment due process is "protection of the individual against arbitrary action of government." *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 845, 118 S. Ct. 1708, 140 L. Ed. 2d 1043 (1998). In order to determine whether the governmental action at issue violated due process guarantees, the question is "'whether the behavior of the governmental officer is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.'" *Morris v. Dearborn*, 181 F.3d 657, 668 (5th Cir. 1999) (quoting *Lewis*, 523 U.S. at 847 n.8). Thus, if the court applies Fourteenth Amendment analysis to this case, it must be determined whether Cardenas's

actions were so egregious and outrageous that they can be characterized as the sort that shocks the contemporary conscience.

Correspondingly and as previously noted, under Fourth Amendment analysis, the question is whether the officer's actions were "objectively reasonable." *Graham v. Connor*, 490 U.S. 386, 396–97, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989). Because the court must consider whether the officer's actions were objectively reasonable when conducting Fourth Amendment analysis and whether the officer's actions shock the contemporary conscience when conducting Fourteenth Amendment analysis, there is an "overlap" of sorts in the analysis applied under each analysis. *See Petta*, 143 F.3d at 913 (acknowledging an overlap between the application of Fourth and Fourteenth Amendment analysis and a convergence between the tests under the Fourth, Eighth, and Fourteenth Amendments). Given the overlap between Fourth, Eighth, and Fourteenth Amendment excessive force standards, the Court of Appeals for the Fifth Circuit has acknowledged that Fourth Amendment standards may be used to analyze claims that implicate the Fourteenth Amendment. *Id.* at 912–13.

Regardless of whether the district court analyzes Cardenas's actions under the Fourth or the Fourteenth Amendment, the district court should find that he is entitled to qualified immunity because his actions were neither objectively unreasonable nor of the type that would shock the contemporary conscience.

B.   Application of Qualified Immunity

Qualified immunity is applicable to suits arising under §1983 that are filed against public officials in their individual capacity. *Crostley v. Lamar Cnty., Tex.*, 717 F.3d 410, 422 (5th Cir. 2013). Qualified immunity "[p]rotects government officials from liability for civil damages

7

to the extent that their conduct is objectively reasonable in light of clearly established law." *Id*. The defense shields government officials who perform discretionary functions from liability "as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Fraire v. City of Arlington*, 957 F.2d 1268, 1273 (5th Cir. 1992) (internal quotation omitted). In order to decide whether the defendant is entitled to qualified immunity, the court conducts a two-prong inquiry determining (1) whether the defendant committed a constitutional violation under current law and (2) whether the defendant's actions were objectively unreasonable in light of the law that was clearly established at the time of the alleged wrongdoing. *Crostley*, 717 F.3d at 422.

Under the reasonableness inquiry applied in Fourth Amendment analysis, the use of force at issue must be judged from the perspective of a reasonable officer on the scene rather than with 20/20 hindsight vision. *Graham*, 490 U.S. at 396. Further, the inquiry is objective. The court must determine whether the defendant's actions were objectively reasonable in light of the facts and circumstances the officer faced at the scene without regard to his underlying intent or motivation. *Id*. at 397. The Supreme Court has instructed that the question of an officer's actions must allow for the fact that law enforcement officers "are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." *Id*. at 396–97. Likewise, when engaging in Fourteenth Amendment analysis, the court must consider the circumstances facing the officer with due regard to the split-second judgments that must often be made in rapidly evolving situations such as high speed pursuits. *See, e.g., Lewis*, 523 U.S. at 853.

The decision in *Scott v. Harris*, 550 U.S. 372, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007), is instructive in this case. The facts in *Scott* involved a high-speed pursuit of a fleeing suspect by several police officers that spanned ten miles at speeds exceeding 85 miles per hour. *Id*. at 375. Six minutes after the pursuit began, an officer maneuvered his car in such a way that caused the fleeing suspect to lose control of his car and ultimately crash down an embankment. *Id*. The man suffered injuries that resulted in quadriplegia. *Id*.

The Court analyzed the facts against the backdrop of qualified immunity and concluded at the first step of the analysis that the officer's actions did not violate the Constitution. *Id*. at 377, 386. In reaching this conclusion, the Court described the scene as one involving "[m]ultiple police cars with blue lights flashing and sirens blaring" and a fleeing suspect who ignored warnings to stop. *Id*. at 384. The Court further described the pursuit as one that posed "extreme danger to human life" and an "actual and imminent threat" to others, including the officers involved in the pursuit. *Id*. at 383–84. In regard to the fleeing suspect, the Court acknowledged that the officer's actions posed a high likelihood of serious injury or death to the suspect. *Id*. at 384. The Court further acknowledged, however, that it was the fleeing suspect who intentionally placed himself and others in danger by ignoring warnings to stop and engaging in a reckless, high-speed flight that ultimately forced the officer to take action. *Id*. Given the facts of the case, the Court determined that it was reasonable for the officer to take the steps that he took to end the pursuit and ultimately held that an officer who takes action to terminate a dangerous high-speed pursuit that threatens lives does not act unconstitutionally, even when the officer's actions place the fleeing motorist at risk of serious injury or death. *Id.* at 386.

9

The district court should reach the same conclusion in this case. Akin testified that he not only drove his car at high speeds throughout the pursuit, but he also testified that he "rammed" his car into the bumper of Cardenas's patrol car a number of times while driving at least ninety miles per hour in an attempt to cause Cardenas's car to spin out of control. He therefore placed countless individuals at risk of serious harm by instigating a high-speed pursuit and using his car as a deadly weapon during the pursuit. *See Fraire*, 957 F.2d at 1276 n.29 (acknowledging that vehicles may be classified as a "deadly weapons"). As in *Scott*, the pursuit in this case involved multiple police officers who chased a suspect who continued to flee from officers over a span of miles at high speeds despite warnings to stop. However, the pursuit in this case posed more danger and imminent threat to others than that in *Scott* because, according to Akin's testimony, it involved higher speeds and spanned four times as many miles. It should also be noted that the fleeing suspect in this case was a felon. Akin testified that he had a previous criminal history of burglary with intent to commit murder and that the officers were pursuing him on June 14, 2012, for charges of attempted murder for which he later pleaded guilty.

Thus, as in *Scott*, decisive action was necessary. *Id.* at 384. This court cannot expect law enforcement officers to refrain from taking decisive action in the face of danger posed by a high-speed pursuit such as the one Akin instigated in this case. *See id.* at 385 ("we are loath to put down a rule requiring the police to allow fleeing suspects to get away whenever they drive so recklessly that they put other people's lives in danger"). And the decisive action Cardenas took, though it could have ended Akin's life, was not unconstitutional. *See id.* at 386; *Tennessee v. Garner,* 471 U.S. 1, 11, 105 S. Ct. 1694, 85 L. Ed. 2d 1 (1985) (holding that it was reasonable to use deadly force to prevent escape of a suspect when there was probable cause to believe that he committed a crime

10

involving the infliction or threatened infliction of serious bodily harm). Giving due regard to the uncertain and rapidly evolving circumstances that Cardenas faced, which arguably posed more risk of danger than those in *Scott*, the deadly force he used was reasonable and was not arbitrary or of the type that would shock the contemporary conscience. To the contrary, though ultimately unsuccessful in halting the pursuit, Cardenas's use of deadly force was calculated to stop Akin and end the dangerous situation Akin created. Society expects law enforcement officers to put an end to situations that place innocent individuals at risk of such danger. That is what Cardenas did in this case. He was faced with a situation that was uncertain and rapidly evolving and that called for action, and he took necessary action. The district court should find that Cardenas's actions did not violate Akin's constitutional rights.

The court need not reach the second prong of the qualified immunity inquiry if it answers the first prong in the negative; put another way, if the court determines that the plaintiff's allegations do not establish the violation of a constitutional right, the defendant is entitled to qualified immunity. *Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010) (citation omitted). Akin's allegations do not establish the violation of a constitutional right. Cardenas is therefore entitled to qualified immunity.

      C.     *Official Capacity – Failure to State a Claim*

To the extent Akin asserts a claim against Cardenas in his official capacity, he has failed to state a claim upon which relief can be granted. An action against an officer in his official capacity is another way of pleading an action against the entity that employs the officer who allegedly committed a constitutional violation. *Kentucky v. Graham*, 473 U.S. 159, 165, 105 S. Ct. 3099, 87 L. Ed. 2d 114 (1985). Thus, when analyzing an official capacity claim, the court must

11

determine whether the governmental entity that employed the officer was the "moving force" behind the constitutional violation. *See In re Foust*, 310 F. 3d 849, 861 (5th Cir. 2002) (citation omitted). Accordingly, the analysis inherently requires a finding of an underlying constitutional violation. *Whitley v. Hanna*, 726 F.3d 631, 639 n.3 (5th Cir. 2013). Because none of Akin's allegations state a constitutional violation, any action he may bring against the City of Petersburg or the City of Petersburg Police Department in regard to the allegations in this action fails to state a cognizable claim and must be dismissed. *Id*. Akin's allegations that Cardenas engaged in a conspiracy does not change this conclusion. A plaintiff fails to state a claim of conspiracy in the absence of an underlying violation. *Hale v. Townley*, 45 F.3d 914, 919 (5th Cir. 1995).

### **Akin's Motion to Amend his Original Complaint**

Akin indicates in the motion he filed seeking leave to amend his Complaint that he wants to include detailed factual background; clarify that Defendant Officer Ray Cardenas is sued in both his individual and official capacities; and add the City of Petersburg, Texas, and the Petersburg Police Department as defendants. He also provides detailed information related to events preceding and surrounding the high-speed pursuit and actions related to his arrest as well as information related to events that preceded the crime for which he was arrested.

It is within the court's discretion to deny a motion to amend when the claim that the party seeks to add would be futile. *Goldstein v. MCI WorldCom*, 340 F.3d 238, 254 (5th Cir. 2003) (citations omitted). None of the factual background Akin offers would change the analysis in this Report and Recommendation. Further, adding the City of Petersburg, Texas, and the Petersburg Police Department to this action would be futile. As the analysis in this Report and

Recommendation demonstrates, Akin has not alleged actions that violated his constitutional rights and cannot, therefore, state a claim against these entities.

### Recommendation

Based on the foregoing discussion and considering Akin's claims in a light favorable to him, this action must be dismissed. The undersigned therefore recommends that the district court **GRANT** Defendant Cardenas's motion to dismiss and **DENY** Akin's motion to amend his Complaint.

### Right to Object

A copy of this Report and Recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this Report and Recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1) (2013); Fed. R. Civ. P. 72(b). To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Report and Recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

Dated:   October 31, 2013.

NANCY M. KOENIG
United States Magistrate Judge

13